IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| BEN PETEREK § | |
| § | |
| V. § | MISCELLANEOUS NO. G-10-mc-7026 |
| § | (Lead Case No. G-10-cv-450) |
| FIDELITY NATIONAL PROPERTY and § | |
| CASUALTY INSURANCE COMPANY § | |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendant, Fidelity National Property and Casualty Insurance Company (Fidelity); the Motion seeks the dismissal of the Amended Complaint of Plaintiff, Ben Peterek, in its entirety. The Motion has been thoroughly briefed and is ripe for a determination. The Court now issues this Opinion and Order.

The relevant facts are not complicated. Peterek's home, which was insured by Fidelity under an SFIP, suffered substantial damage during Hurricane Ike. Peterek submitted an initial Proof of Loss and Fidelity paid him a total of $51,254.03 for building damages. On April 22, 2009, Peterek submitted a Proof of Loss for ICC benefits. By April 26, 2009, Peterek had the home completely demolished; Peterek made no repairs to the building before its demolition. On May 1, 2009, Fidelity paid Peterek $7,700.00 in ICC benefits. On July 28, 2009, Peterek submitted another Proof of Loss for $167,200.00 in additional benefits; Fidelity rejected this Proof of Loss by letter dated October 19, 2009. On August 10, 2010, Peterek sued Fidelity for breach of contract. On November 15, 2010, TWIA made its final payment to Peterek in the amount of $81,000.00 for a total damages settlement of $96,877.93. To date, Peterek has not begun to

rebuild the home. Fidelity now seeks summary judgment by arguing that, *inter alia*, Peterek has been overcompensated on his claim for building damage.

The Court will not recite the well-established summary judgment standard. However, the Court feels compelled to preface its Opinion and Order with a few observations about summary judgment in non-jury cases. A trial judge in a non-jury case may, at the summary judgment stage, draw inferences from the evidence when that same judge will act as trier of fact unless the inferences involve issues of credibility or disputed material facts. "If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should 'draw his inferences without resort to the expense of a trial.'" In re Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991) (quoting Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir. 1978)) If the Court can determine that the undisputed material facts and the reasonable inferences from those facts would support judgment as a matter of law for movant, summary judgment should be granted.

Fidelity argues that, under the present circumstances of this case, Peterek's claim is limited to the actual cash value (ACV) of his home at the time of the loss. ACV is defined in the policy as "(t)he cost to replace an insured item at the time of loss, less the value of its physical depreciation." Peterek disagrees. He concedes that the cases cited by Fidelity support its theory that replacement costs are not recoverable unless or until an insured actually repairs or replaces the insured property. See Lerer Realty Corp. v. MFB Mutual Insurance Co., 474 F.2d 410, 412-13 (5th Cir. 1973) He also admits that "this was the common procedure on flood claims until May 7, 2004." But he argues that a bulletin issued by FEMA on that date superceded the otherwise applicable law and procedure. That bulletin provided, *inter alia*, that "When insured

property is eligible for replacement costs loss settlement, there is no longer any requirement to hold back recoverable depreciation." Peterek apparently believes that because FEMA, on January 22, 2009, paid him approximately $9,000.00 for "recoverable depreciation of building damage arising from loss on 9/12/08," Fidelity made a binding, final commitment to pay replacement cost value for his property loss claim.  This Court is not persuaded.   While it is true that Peterek's property was "eligible" for RCV "when" it was damaged and "when" he received the $9,000.00 payment, Peterek's subsequent demolition of the house and failure to rebuild it eliminated the property's RCV "eligibility."  Hence, the Court **FINDS** that Peterek is now only entitled to recover the actual cash value of his property.  The original adjuster, hired by Fidelity, actually examined the home and found its ACV to be $92,115.76.  The engineering firm hired by Fidelity estimated the ACV to be $90,301.43.  Peterek's expert evidence only addresses the cost to repair the home; Plaintiff has offered no evidence as to the ACV of the home at the time of the loss.[1]  Therefore, the Court **FINDS** that the only credible evidence as to ACV, even in the light most favorable to Peterek, is that of the original adjuster:  $92,115.76.

As noted above, Peterek also received $96,877.93 from TWIA.  In an effort to avoid the "One-Satisfaction Rule," see Mid-Continent Ins. Co. v. Liberty Mutual Ins. Co., 236 S.W.3d 765, 775 (Tex. 2007), Peterek argues that the final lump-sum payment of $81,000.00 was not itemized and it is "more reasonable to believe that all or part of the payment" was for "statutory damages, interest and attorneys' fees" sought in his state court action for windstorm damage against TWIA.  However, as Fidelity points out, TWIA issued separate checks payable to Peterek

---

[1] The Court notes, in passing, that discovery was closed on March 29, 2013.

and his lawyers, and the $81,000.000 check was made payable to Peterek and his mortgage servicer. The fact that Aurora Loan Services appeared on the TWIA check is not in dispute and it is most reasonable to infer that the amount, therefore, was for building damages since Aurora would have no interest in settlement funds designated for other damages and it would seem unlikely that Peterek would abandon his right to lay sole claim to such payments. The Court, therefore, **FINDS** that the $81,000.000 is properly considered a payment for damages to Peterek's property.

When the TWIA payment is found to be attributable to Peterek's building damage, it triggers the application of the One-Satisfaction Rule and is available to be credited to Fidelity's advantage. So applied, it establishes that Peterek has received almost $156,000.00 for a home with an actual cost value at the time it was damaged of approximately $92,000.000. Accordingly, the Court **FINDS** that, at present, Peterek has been more than fully compensated for his building loss and that Fidelity has no further liability for any payment to Peterek under the SFIP.

It is, therefore, the **ORDER** of this Court that the Motion for Summary Judgment (Instrument no. 12) of Defendant, Fidelity National Property and Casualty Insurance Company, is **GRANTED** and that the Amended Complaint (Instrument no. 2) of Plaintiff, Ben Peterek, is **DISMISSED**.

**DONE** at Galveston, Texas, this _____10th_____ day of September, 2013.

_____
John R. Froeschner
United States Magistrate Judge